Harold McDougall IV (CA SBN 234972)
12021 Wilshire Blvd #538
Los Angeles, CA 90025
Tel: (424) 704-5647
Email: harold@godwinllp.biz

Attorney for Plaintiff
JOSEPH NASSER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JOSEPH NASSER, an individual residing in California,

Plaintiff,

vs.

JACK NASSER, an individual residing in California; JACOB NASSER, an individual residing in California; NASSER BROTHERS STUDIOS, a California Corporation; DANNY WEBBER, an individual residing in Ontario; STUDIO CITY PICTURES, INC., a California Corporation; ENLIGHTEN CONTENT a British Columbia Corporation and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:26-cv-12100

**COMPLAINT FOR:**
**(1) INFRINGEMENT OF COPYRIGHT;(2) CONTRIBUTORY INFRINGEMENT OF COPYRIGHT; (3) VICARIOUS INFRINGEMENT OF COPYRIGHT UNDER THE COPYRIGHT ACT 17 U.S.C. §101 et seq.; (4) BREACH OF FIDUCIARY DUTY; (5) BREACH OF CONTRACT; (6) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (7) CONVERSION; (8) AIDING AND ABETTING CONVERSION; (9) INTENTIONAL MISREPRESENTATION; AND (10) VIOLATION OF P.C. §496(C) UNDER CALIFORNIA LAW**

**DEMAND FOR A JURY TRIAL**

Plaintiff Joseph Nasser ("Plaintiff"), by and through his undersigned attorney, submits this Complaint against defendant Jack Nasser ("Defendant Jack Nasser"), defendant Jacob Nasser ("Defendant Jacob Nasser"), defendant Danny Webber ("Defendant Webber"), defendant Nasser Brothers Studios ("Defendant NBS"), defendant Studio City Pictures, Inc ("Defendant Studio City") and defendant Enlighten Content ("Defendant Enlighten", and together with Defendant Jack Nasser, Defendant Jacob Nasser, Defendant Webber, Defendant Studio City, and Defendant NBS, collectively "Defendants") and in support thereof, avers as follows:

## INTRODUCTION

1. This is a civil action arising out of Defendants' unauthorized distribution of copyrights in and to the literary materials authored by Plaintiff and Plaintiff's copyrightable contribution to such materials (collectively, the "Copyrights") contained in the motion picture *Anna Nicole* (the "Anna Nicole Film") and contained in the Plaintiff Created Films (as such term is defined below).

2. In particular, Defendants have acted willfully and with reckless disregard with respect to the ownership of the Copyrights contained in the Film and the Plaintiff Created Films in distributing the Film and the Plaintiff Created Films, and refused to pay for or license the Copyrights, ignoring their agreements with Plaintiff to the contrary.

## FACTUAL BACKGROUND

3. Plaintiff and Defendant Jack Nasser engaged in joint venture operations relating to a library of motion pictures (the "Motion Picture Library"), including, without limitation, the Anna Nicole Film, certain films derived from original screenplay literary properties written and created by Plaintiff (the "Plaintiff Created Films", as defined below) and other films on which Plaintiff provided producer services (the "Plaintiff Produced Films" and together with the Plaintiff Created Films, the "Plaintiff Derived Films").

4. As part of their joint operations relating to the Motion Picture Library, Plaintiff allowed a limited license to create derivative works based on the Copyrights to

Defendant Jack Nasser and Defendant NBS (the "Limited License"), which was conditional upon, *inter alia*: (i) Plaintiff approving any distribution of the films resulting from the Copyrights and the business terms of any related distribution agreements; (ii) Plaintiff approving any distributor or sublicensees of the films resulting from the Copyrights and (iii) Plaintiff receiving Fifty Percent (50%) of defined proceeds and profits derived from the exploitation of the Motion Picture Library, including, without limitation, the exploitation of the film distribution rights relating to the Motion Picture Library and the music licensing, music publishing and music library ancillary rights relating to the Motion Picture Library (the foregoing are collectively referred to herein as the "Plaintiff's Profit Share").

5. Plaintiff obtained a copyright registration[1] as author of the literary materials and motion picture screenplay entitled *Anna Nicole* (the "Anna Nicole Film Copyright" a true and correct copy is attached hereto as **Exhibit 1**).

6. In addition to the Anna Nicole Film Copyright, Plaintiff is the author and registered copyright owner of the literary materials and screenplay of other films also exploited as part of the Motion Picture Library, including the following: (a) *Blue Moon Ball*[2]; (b) *The Valentine Competition a/k/a Be Mine*[3]; (c) *FBI: Negotiator a/k/a The Lottery*[4]; (d) *The Wedding Chapel*[5]; (e) *A Father's Secret a/k/a Madam X / Hunt for Truth*[6]; (f) *Crash Site / A Family Again*[7]; (g) *Amber Alert: Terror on the Highway*[8]; (h) *What Would Jesus Do*[9]; (i) *WWJD: The Journey Continues*[10]; (j) *WWJD: The Woodcarver*[11]; (k) *The Bouquet a/k/a The Flower Farm*[12]; (l) *Stressed to Death a/k/a*

---

[1] Copyright Registration PAu 3-507-745
[2] Copyright Registration TXu 2-564-846
[3] Copyright Registration TXu 2-564-846
[4] Copyright Registration TXu 2-563-727
[5] Copyright Registration TXu 2-564-846
[6] Copyright Registration TXu 2-563-727
[7] Copyright Registration TXu 2-563-168
[8] Copyright Registration TXu 2-563-168
[9] Copyright Registration TXu 2-563-168
[10] Copyright Registration TXu 2-563-168
[11] Copyright Registration TXu 2-563-168
[12] Copyright Registration TXu 2-564-846

*Deadly EMT*[13]; (m) *Obsessed with the Babysitter*[14]; (n) *Midnight Stallion*[15]; (o) *A Christmas Tail aka Puppy Love*[16]; (p) *Flowers and Honey*[17]; (q) *Killer Ending aka the Book*[18]; (r) *The Suspect a/k/a The Partner / The Murder of Ed Cates*[19]; (s) *Deadly Entanglement a/k/a Deadly Ex-Wife*[20]; (t) *Paparazzi Princess: The Paris Hilton Story a/k/a Hollywood Brats*[21]; (u) Christmas Crash a/k/a Crash on Christmas[22]; and (v) *Fatal Kiss / Love to Kill* [23] (collectively referred to herein as the "Plaintiff Created Materials").

7. Defendant Jack Nasser and Defendant NBS had access to the Anna Nicole Film Copyright related materials and the Plaintiff Created Materials.

8. Plaintiff is the author of certain literary materials, including, without limitation the Anna Nicole Film Copyright and the Plaintiff Created Materials, that are included in the Plaintiff Created Films (the "Created Films Derived Materials"), and Plaintiff is the owner of the copyrights in and to the Created Films Derived Materials and Plaintiff's copyrightable contribution to such materials (the "Created Films Copyrights").

9. Defendants have wrongfully included the literary materials authored by Plaintiff and Plaintiff's copyrightable contribution therein, including, without limitation the Plaintiff Created Materials, in Defendants exploitation of certain motion pictures with titles closely approximating the titles of the Anna Nicole Film Copyright and the titles of the Plaintiff Created Materials (such exploited derivative motion pictures are collectively referred to herein as the "Plaintiff Created Films") in Defendants' exploitation of the Motion Picture Library.

---

[13] Copyright Registration TXu 2-564-846
[14] Copyright Registration TXu 2-564-846
[15] Copyright Registration TXu 2-564-846
[16] Copyright Registration TXu 2-563-168
[17] Copyright Registration TXu 2-563-168
[18] Copyright Registration TXu 2-563-168
[19] Copyright Registration TXu 2-563-727
[20] Copyright Registration TXu 2-563-727
[21] Copyright Registration TXu 2-563-727
[22] Copyright Registration TXu 2-563-727
[23] Copyright Registration TXu 2-563-168

10. The Plaintiff Created Films include, without limitation: (a) *Blue Moon Ball*[24] (based on the screenplay *Blue Moon Ball*[25]) ; (b) *Be Mine aka The Valentine Competition*[26] (based on the screenplay *The Valentine Competition a/k/a Be Mine*[27]); (c) *FBI: Negotiator*[28] (based on the screenplay *FBI: Negotiator a/k/a The Lottery*[29]); (d) *The Wedding Chapel*[30] (based on the screenplay *The Wedding Chapel*[31]); (e) *A Father's Secret* (based on the screenplay *A Father's Secret a/k/a Madam X / Hunt for Truth*[32]); (f) *A Family Again*[33] (based on the screenplay *Crash Site / A Family Again*[34]); (g) *Amber Alert: Terror on the Highway* (based on the screenplay *Amber Alert: Terror on the Highway*[35]); (h) *WWJD*[36] (based on the screenplay *What Would Jesus Do*[37]); (i) *WWJD What Would Jesus Do? The Journey Continues*[38] (based on the screenplay *WWJD: The Journey Continues*[39]); (j) *The Woodcarver*[40] (based on the screenplay *WWJD: The Woodcarver*[41]); (k) *The Bouquet*[42] (based on the screenplay *The Bouquet a/k/a The Flower Farm*[43]); (l) *Stressed to Death aka Mother At Large*[44] (based on the screenplay *Stressed to Death a/k/a Deadly EMT*[45]); (m) *Obsessed with the Babysitter* (based on the screenplay *Obsessed with the Babysitter*[46]); (n) *Midnight Stallion*[47] (based on the

---

[24] Copyright Registration PAu 4-083-674; Copyright Registration PAu 4-104-667
[25] Copyright Registration TXu 2-564-846
[26] Copyright Registration PA 2-404-537
[27] Copyright Registration TXu 2-564-846
[28] Copyright Registration PA0001618631
[29] Copyright Registration TXu 2-563-727
[30] Copyright Registration PAu 3-626-810
[31] Copyright Registration TXu 2-564-846
[32] Copyright Registration TXu 2-563-727
[33] Copyright Registration PAu 3-576-660
[34] Copyright Registration TXu 2-563-168
[35] Copyright Registration TXu 2-563-168
[36] Copyright Registration PAu 3-418-549
[37] Copyright Registration TXu 2-563-168
[38] Copyright Registration TXu 1-927-247; Copyright Registration PA 1-959-929
[39] Copyright Registration TXu 2-563-168
[40] Copyright Registration PAu 3-575-087; Copyright Registration PAu 3-632-628
[41] Copyright Registration TXu 2-563-168
[42] Copyright Registration PAu 3-662-990; Copyright Registration PAu 3-621-743
[43] Copyright Registration TXu 2-564-846
[44] Copyright Registration PAu 3-978-302
[45] Copyright Registration TXu 2-564-846
[46] Copyright Registration TXu 2-564-846
[47] Copyright Registration PAu 3-682-621

screenplay *Midnight Stallion*[48]); (o) *A Christmas Tail*[49] (based on the screenplay *A Christmas Tail aka Puppy Love*[50]); (p) *Flowers and Honey*[51] (based on the screenplay *Flowers and Honey*[52]); (q) *Killer Ending*[53] (based on the screenplay *Killer Ending aka the Book*[54]); (r) *The Suspect* [55] (based on the screenplay *The Suspect a/k/a The Partner / The Murder of Ed Cates*[56]); (s) *Deadly Entanglement aka Deadly Ex-wife*[57] (based on the screenplay *Deadly Entanglement a/k/a Deadly Ex-Wife*[58]); (t) *Paparazzi Princess: The Paris Hilton Story*[59] (based on the screenplay *Paparazzi Princess: The Paris Hilton Story a/k/a Hollywood Brats*[60]); (u) *Christmas Crash*[61] (based on the screenplay *Christmas Crash a/k/a Crash on Christmas*[62]); and (v) *Love to Kill*[63] (based on the screenplay *Fatal Kiss / Love to Kill* [64])

11. Defendants have inaccurately registered the copyrights to certain Plaintiff Derived Films with the U.S. Copyright Office (the "Incorrect Registrations") to wrongfully claim ownership of some of the derivative film works derived from the Copyrights.

12. In connection with their distribution of the Motion Picture Library, Defendants have distributed and obtained financial compensation from the exploitation of the Created Films Copyrights in a manner which exceeds the terms and scope of the Limited License.

---

[48] Copyright Registration TXu 2-564-846
[49] Copyright Registration PAu 3-754-520
[50] Copyright Registration TXu 2-563-168
[51] Copyright Registration PAu 4-057-372
[52] Copyright Registration TXu 2-563-168
[53] Copyright Registration PAu 3-933-211
[54] Copyright Registration TXu 2-563-168
[55] Copyright Registration PA0001317375
[56] Copyright Registration TXu 2-563-727
[57] Copyright Registration PA 2-567-852
[58] Copyright Registration TXu 2-563-727
[59] Copyright Registration PAu 3-459-806
[60] Copyright Registration TXu 2-563-727
[61] Copyright Registration PAu 3-459-813
[62] Copyright Registration TXu 2-563-727
[63] Copyright Registration PAu 3-459-810
[64] Copyright Registration TXu 2-563-168

13. In connection with their distribution of the Motion Picture Library, Defendants have distributed and obtained financial compensation from the exploitation of the Created Films Copyrights without paying Plaintiff the correct amount of the Plaintiff's Profit Share.

14. In connection with their distribution of the Motion Picture Library, Defendants have distributed and obtained financial compensation from the exploitation of the Created Films Copyrights without Plaintiff approving all distribution and distributors of the films resulting from the Created Films Copyrights and the business terms of any related distribution agreements.

15. On information and belief, Defendant Jack Nasser and Defendant Jacob Nasser have misrepresented to Plaintiff, and concealed from Plaintiff, the accurate amount of the Plaintiff's Profit Share.

16. On information and belief, certain Defendants have taken and embezzled portions of the Plaintiff's Profit Share.

17. On information and belief, Defendant Jack Nasser and Defendant Jacob Nasser repeatedly misled Plaintiff (both verbally and in email correspondence) regarding the true nature of the business affairs and business transactions relating to the Motion Picture Library (including, without limitation, the business affairs and business transactions relating to the Plaintiff Created Films).

18. On information and belief, Defendant Jack Nasser and Defendant Jacob Nasser repeatedly misrepresented to Plaintiff (both verbally and in email correspondence) that no licensing revenue was being received or derived from the Motion Picture Library (including, without limitation, the Plaintiff Created Films), when licensing revenue was in fact being received and derived from the Motion Picture Library and then being wrongfully taken by Defendant Jack Nasser and Defendant Jacob Nasser.

19. On information and belief, certain Defendants have taken and embezzled portions of the residuals payable to Plaintiff in connection with the distribution of the

Motion Picture Library, including, without limitation, by forging Plaintiff's signature on residual checks.

20. In October 2025, Plaintiff discovered a series of accounting irregularities relating to the distribution of the Motion Picture Library, and relating to the profits derived from the Motion Picture Library. This prompted further investigation by Plaintiff of the aforementioned distribution and accounting relating to the Motion Picture Library.

21. Defendants are entitled to receive a portion of the proceeds of their U.S. distribution of the Motion Picture Library (and/or a portion thereof), in an amount to be proven at trial.

22. The Created Films Copyrights originated in the United States. Generally under the Copyright Act, all transfers of copyright must be in writing. (17 U.S.C. § 201(d); (17 U.S.C. § 204(a)).

23. Under the Copyright Act, ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. (17 U.S.C. § 202.)

24. Through its unauthorized U.S. distribution of the Created Films Materials as part of the Motion Picture Library, Defendants infringe Plaintiff's Copyrights.

25. Under Canadian copyright law, generally the creator (or author) of a work is the copyright owner of a work.

26. As the original owner and sole owner of the Created Films Materials, Plaintiff owns or holds the exclusive U.S. rights to, among other things, reproduce, distribute, and publicly perform (including by means of streaming those works over the Internet) the Created Films Copyrights.

27. Defendants have distributed the Created Films Copyrights in a manner which exceeds the terms and scope of the Limited License. Plaintiff has not authorized Defendants to distribute any of the Copyrights in a manner exceeding the terms or scope of the Limited License, or to exercise any of Plaintiff's other exclusive rights under the Copyright Act, 17 U.S.C. § 106 in connection with such unauthorized use.

28. Defendants receive money and other consideration in connection with the distribution of the Copyrights and the Motion Picture Library (including without limitation, the Plaintiff Created Films, the Created Films Copyrights, and the Created Films Derived Materials) in an amount to be proven at trial.

29. Plaintiff exercises his exclusive rights by licensing his copyrights to producers and distributors, thereby developing and satisfying demand for Plaintiff's copyrighted content. Plaintiff, not Defendants, has the right to decide where, when, and how Plaintiff's Copyrights will be distributed to the public. Defendants' conduct usurps Plaintiff's control over the exercise of these exclusive rights, interfering with Plaintiff's distribution strategies and distorting the market for Plaintiff's work.

30. Defendants have an unfair competitive advantage over licensed users of Plaintiff's copyrighted works. Licensed users negotiate for the rights they exploit, pay for those rights, and abide by contractual restrictions. Defendants do not abide by such restrictions because Defendants circumvent their agreements relating to the licensing process for Plaintiff's copyrighted works altogether.

31. Defendants' conduct irreparably harms Plaintiff and his legitimate licensees by sowing confusion about the value of the Plaintiff's copyrighted works. Because Defendants appropriate, rather than pay for the use of Plaintiff's copyrighted works, Defendants undermine consumer expectations of value for Plaintiff's legitimate services, thereby causing immediate and irreparable harm to Plaintiff.

32. Defendants' actions were willful, intentional, and executed with full knowledge of Plaintiff's intellectual property rights, causing severe financial harm and dilution of the commercial value of Plaintiff's Profit Share and the Motion Picture Library.

33. Defendants have violated 17 U.S.C. §101 et seq. (collectively, the "Copyright Act") and have been unjustly enriched at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm as described herein.

34. Among other things, this action seeks redress for Defendant's unauthorized infringement of Plaintiff's Copyrights.

## JURISDICTION AND VENUE

35. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because Plaintiff asserts causes of action arising under federal law, 28 U.S.C. § 1338 (original jurisdiction) because Plaintiff asserts causes of action arising under the Copyright Act and pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because Plaintiff asserts claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

36. This Court has personal jurisdiction over Defendants because Defendants directly or through their intermediaries (including distributors, retailers, exhibitors and others) have attempted to exploit Plaintiff's Copyrights in the United States, and this district, including but not limited to as part of the distribution of the Motion Picture Library, without acknowledging Plaintiff's ownership of the Copyrights.

37. Defendants have purposefully and voluntarily placed the Film into the stream of commerce with the expectation that it will be purchased in this district.

38. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district. *Allstar Marketing Group, LLC v. Your Store Online*, *LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009). Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) and 28 U.S.C. §1400(a).

## PARTIES

39. Plaintiff Joseph Nasser is an individual residing in California.

40. Defendant Jack Nasser is an individual residing in California.

41. Defendant Jacob Nasser is an individual residing in California.

42. Defendant NBS is a California corporation with a principal place of business in Santa Clarita, California.

43. Defendant Danny Webber is an individual residing in Ontario, Canada.

44. Defendant Studio City is a California corporation with a principal place of business in Santa Clarita, California.

45. Defendant Enlighten is a British Columbia Corporation with a principal place of business in Burnaby, British Columbia.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Direct Copyright Infringement – Against All Defendants)

46. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

47. Plaintiff is the sole owner of valid copyrights in and to the Copyrights.

48. The owner of a copyright has several exclusive rights under the Copyright Act, the most relevant being the rights to reproduce the work, prepare derivative works based on the work and distribute the work. (17 U.S.C. § 106(1)-(3)).

49. By distributing Plaintiff's Copyrights and the Created Films Copyrights to the general public as a part of their distribution of the Motion Picture Library, (including via unlicensed sublicensees and sub distributors) Defendants have infringed Plaintiff's exclusive rights of the reproduction, derivation and distribution of Plaintiff's Copyrights without obtaining a license or obtaining Plaintiff's consent.

50. Defendants have unlawfully appropriated Plaintiff's Copyrights and the Created Films Copyrights by including the Copyrights and the Created Films Copyrights in the Motion Picture Library distributed by Defendants (including via unlicensed sublicensees and sub distributors), with notice that no license to use the Copyrights or the Created Films Copyrights in an unauthorized manner was granted by Plaintiff.

51. By distributing the Copyrights and the Created Films Copyrights in the Motion Picture Library without obtaining an authorized license or authorization from Plaintiff, Defendants violated Plaintiff's exclusive rights as the copyright owner under the Copyright Act.

52. Having notice that no license to use the Copyrights or the Created Films Copyrights in an unauthorized manner was granted by Plaintiff, Defendants knew their actions constitute multiple copyright infringements.

53. Having received notice that no license to use the Copyrights or the Created Films Copyrights in an unauthorized manner was granted by Plaintiff, Defendants acted with reckless disregard and willful blindness to Plaintiff's copyrights.

54. With knowledge of Defendants' unauthorized use of Plaintiff's Copyrights and the Created Films Copyrights, Defendants continue to use and profit from the Copyrights and the Created Films Materials without expecting to pay Plaintiff for use of the Copyrights or the Created Films Materials. Plaintiff is irreparably harmed by Defendants' brazen infringement in ways that cannot easily be calculated or remedied by monetary damages.

## SECOND CLAIM FOR RELIEF

**(Contributory Copyright Infringement - Against Defendant Jack Nasser, Defendant Studio City and Defendant NBS)**

55. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

56. By including the Copyrights in the Motion Picture Library for U.S. distribution without an authorized license or Plaintiff's authorization, Defendant Jack Nasser, Defendant NBS, Defendant Studio City and Defendant Enlighten (together with certain to be identified sublicensees of the foregoing Defendants) directly infringed the Plaintiff's Copyrights.

57. Defendant Jack Nasser, Defendant Studio City and Defendant NBS knew that Defendant Jack Nasser, Defendant NBS, Defendant Studio City and Defendant Enlighten (together with certain to be identified sublicensees of the foregoing Defendants) directly infringed the Plaintiff's Copyrights, including the Copyrights distributed in films included in the Motion Picture Library.

58. As financiers of the Motion Picture Library and as distributors for the Motion Picture Library, Defendant Jack Nasser, Defendant Studio City and Defendant NBS intentionally and materially contribute to Defendant Enlighten's (together with certain to be identified sublicensees of Defendant Enlighten, Defendant Studio City and Defendant NBS) infringement of Plaintiff's Copyrights.

## THIRD CLAIM FOR RELIEF

**(Vicarious Copyright Infringement – Against Defendant Jack Nasser, Defendant Studio City and Defendant NBS)**

59. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

60. As financiers of the Motion Picture Library and as the U.S. distributors for the Motion Picture Library, Defendant Jack Nasser, Defendant Studio City and Defendant NBS have the right and ability to supervise and to control Defendant Jack Nasser's, Defendant NBS's, Defendant Studio City's and Defendant Enlighten's (together with certain to be identified sublicensees of the foregoing Defendants) infringing activities described herein above.

61. As a financier of the Motion Picture Library and a U.S. distributor for the Motion Picture Library, as a recipient of portion of the sales proceeds from the licensing of the Motion Picture Library, and as a licensor of the Motion Picture Library's U.S. distribution rights, Defendant Jack Nasser, Defendant NBS, and Defendant Studio City (together with certain to be identified sublicensees of the foregoing Defendants) have a direct financial interest in the infringing activities described herein above.

## FOURTH CLAIM FOR RELIEF

**(Breach of Fiduciary Duty – Against Defendants Jack Nasser and Jacob Nasser)**

62. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

63. As fellow participants in the joint venture relating to the Motion Picture Library, Defendant Jack Nasser and Defendant Jacob Nasser had a fiduciary obligation to act with the utmost good faith for the benefit of Plaintiff.

64. By failing to properly account for and pay Plaintiff's Profit Share, Defendant Jack Nasser and Defendant Jacob Nasser knowingly acted against Plaintiff's interests in connection therewith, and breached their fiduciary duties to Plaintiff.

65. By distributing the Created Films Derived Materials in a manner that exceeded the terms and scope of the Limited License, Defendant Jack Nasser and Defendant Jacob Nasser knowingly acted against Plaintiff's interests in connection therewith, and breached their fiduciary duties to Plaintiff.

66. By appropriating funds that rightfully belonged to Plaintiff, Defendant Jack Nasser and Defendant Jacob Nasser knowingly acted against Plaintiff's interests in connection therewith, and breached their fiduciary duties to Plaintiff.

67. Plaintiff did not give informed consent to Defendant Jack Nasser's or Defendant Jacob Nasser's aforementioned conduct.

68. Defendant Jack Nasser's and Defendant Jacob Nasser's conduct was done with oppression, fraud, or malice, sufficient to entitle Plaintiff to an award of punitive damages, pursuant to California Civil Code § 3294.

69. Plaintiff was harmed by the aforementioned Defendants' breaches, in an amount to be proven at trial, but in no event less than $35,000.

## **FIFTH CLAIM FOR RELIEF**

**(Breach of Contract– Against Defendants)**

70. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

71. Plaintiff fully performed all of his obligations in connection with his agreements set forth above.

72. Defendant Jack Nasser and Defendant Jacob Nasser breached their agreements with Plaintiff to distribute and reproduce the Created Films Derived Materials only within the terms and scope of the Limited License.

73. Defendant Jack Nasser and Defendant Jacob Nasser breached their agreements to pay Plaintiff the Plaintiff's Profit Share.

74. Plaintiff was harmed by Defendant Jack Nasser's and Defendant Jacob Nasser's breaches of their agreements with Plaintiff, in an amount to be proven at trial, but in no event less than $35,000.

75. Defendant Jack Nasser's and Defendant Jacob Nasser's breaches of their agreements with Plaintiff were a substantial factor in causing Plaintiff's harm.

## SIXTH CLAIM FOR RELIEF

**(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against Defendants)**

76. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

77. By failing to properly account for and pay Plaintiff's Profit Share, Defendant Jack Nasser and Defendant Jacob Nasser prevented Plaintiff from receiving the benefits under their agreements.

78. By distributing the Created Films Derived Materials in a manner that exceeded the terms and scope of the Limited License, Defendant Jack Nasser and Defendant Jacob Nasser prevented Plaintiff from receiving the benefits under their agreements.

79. By appropriating funds that rightfully belonged to Plaintiff, Defendant Jack Nasser and Defendant Jacob Nasser prevented Plaintiff from receiving the benefits under their agreements.

80. By failing to properly account for and pay Plaintiff's Profit Share, and by distributing the Created Films Derived Materials in a manner that exceeded the terms and scope of the Limited License, Defendant Jack Nasser and Defendant Jacob Nasser did not

act fairly and in good faith, and Plaintiff was harmed by Defendants' conduct in an amount to be proven at trial, but in no event less than $35,000.

**SEVENTH CLAIM FOR RELIEF**

**(Conversion – Against Defendant Jack Nasser)**

81. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

82. Plaintiff was the sole owner of Plaintiff's Profit Share.

83. By taking and embezzling portions of the Plaintiff's Profit Share, Defendant Jack Nasser converted property solely owned by Plaintiff, and Plaintiff was harmed by Defendant Jack Nasser's conduct in an amount to be proven at trial, but in no event less than $35,000.

84. Defendant Jack Nasser's conduct was done with oppression, fraud, or malice, sufficient to entitle Plaintiff to an award of punitive damages, pursuant to California Civil Code § 3294.

**EIGHTH CLAIM FOR RELIEF**

**(Aiding and Abetting Conversion – Against Defendant Jacob Nasser and Defendant Webber)**

85. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

86. Defendant Jacob Nasser and Defendant Webber possessed advance information they received from Defendant Jack Nasser that alerted them that a conversion was going to be committed by Defendant Jack Nasser against Plaintiff.

87. Defendant Jacob Nasser received this information while he served as a partner in Defendant Jack Nasser's and Defendant Enlighten Content's distribution ventures in connection with the Motion Picture Library.

88. Defendant Webber received this information while serving as the attorney and representative for Defendant Jack Nasser and Defendant Jacob Nasser in their distribution ventures in connection with the Motion Picture Library.

89. Defendant Webber had previously represented Plaintiff, Defendant Jack Nasser, Defendant NBS, and Defendant Studio City, and represented to Plaintiff that he was the representative of all of the foregoing entities equally, when in fact he represented Defendant Jack Nasser and Defendant Jacob Nasser in their distribution ventures in connection with the Motion Picture Library (to the detriment of Plaintiff).

90. On information and belief, Defendant Webber misled Plaintiff (both verbally and in email correspondence) regarding the true nature of the business affairs and business transactions relating to the Motion Picture Library, including, without limitation, the business affairs and business transactions relating to the Plaintiff Created Films.

91. On information and belief, by creating and assisting in creating the financial documentation and records associated with Defendant Jack Nasser embezzling portions of the Plaintiff's Profit Share, issuing payment transfer instructions in connection with the foregoing, and as further alleged in this Complaint, Defendant Jacob Nasser and Defendant Webber gave substantial assistance and encouragement to Defendant Jack Nasser in his conversion against Plaintiff.

92. Defendant Jacob Nasser's and Defendant Webber's conduct as set forth above was a substantial factor in causing harm to Plaintiff, including without limitation, through significant and substantial losses to the financial consideration that was part of the Plaintiff's Profit Share.

93. Plaintiff was harmed by Defendants Jacob Nasser's and Defendant Webber's conduct in an amount to be proven at trial, but in no event less than $35,000.

94. Defendant Jacob Nasser's and Defendant Webber's conduct was done with oppression, fraud, or malice, sufficient to entitle Plaintiff to an award of punitive damages, pursuant to California Civil Code § 3294.

## NINTH CLAIM FOR RELIEF

**(Intentional Misrepresentation – Against Defendant Jack Nasser and Defendant Jacob Nasser)**

95. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

96. On information and belief, Defendant Jack Nasser made multiple intentional misrepresentations to Plaintiff.

97. Defendant Jack Nasser and Defendant Jacob Nasser repeatedly represented to Plaintiff verbally and in written correspondence that all revenue associated with the distribution of the Motion Picture Library was being reported to Plaintiff, and that Plaintiff's Profit Share was fully and properly accounted for. Defendant Jacob Nasser made these representations again in November 2025.

98. Defendant Jack Nasser and Defendant Jacob Nasser knew that the aforementioned representations were not true, or made the representations recklessly and without regard for their truth, because Defendant Jack Nasser and Defendant Jacob Nasser knew (at the time they made the aforementioned representations) that they were underreporting income being earned from the Motion Picture Library and misappropriating a portion of Plaintiff's Profit Share, in an amount to be proven at trial.

99. Defendant Jack Nasser and Defendant Jacob Nasser intended that Plaintiff rely on the aforementioned representations.

100. Plaintiff reasonably relied on Defendant Jack Nasser's and Defendant Jacob Nasser's aforementioned representations.

101. Plaintiff's reliance on Defendant Jack Nasser's and Defendant Jacob Nasser's aforementioned representations was a substantial factor in causing Plaintiff harm, and Plaintiff was harmed by Defendant Jack Nasser's and Defendant Jacob Nasser's conduct in an amount to be proven at trial, but in no event less than $35,000.

102. Defendant Jack Nasser's and Defendant Jacob Nasser's conduct was done with oppression, fraud, or malice, sufficient to entitle Plaintiff to an award of punitive damages, pursuant to California Civil Code § 3294.

**TENTH CLAIM FOR RELIEF**

**(Violation of P.C. §496(c)– Against Defendants Jack Nasser and Jacob Nasser)**

103. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

104. By wrongfully taking and misappropriating portions of the Plaintiff's Profit Share that were solely owned by Plaintiff, Defendants Jack Nasser and Jacob Nasser fraudulently appropriated property which has been entrusted to them, and Defendants knowingly and designedly, by false or fraudulent representation or pretense, defrauded Plaintiff of money and labor, and violated California Penal Code Section 496(c), and Plaintiff was harmed by Defendants' conduct in an amount to be proven at trial, but in no event less than $35,000.

**PRAYER**

Wherefore, Plaintiff Joseph Nasser prays for judgment against Defendants as follows:

1. For an award of actual damages for infringement under the Copyright Act;
2. For an injunction to prevent Defendants' future infringement of the Copyrights;
3. For restitution of Defendants' ill-gotten gains;
4. For punitive damages in an amount to be proven at trial;
5. For an accounting;
6. For disgorgement of all improper benefits, profits, and/or gains;
7. For fair compensation for the time and money properly expended in pursuit of the Plaintiff's Profit Share (Cal. Civ.Code, § 3336).
8. For costs and attorneys' fees consistent with the Copyright Act (17 U.S.C. § 505);

9. For costs and attorneys' fees consistent with California Penal Code Section 496(c);

10. Treble Damages pursuant to Pen. Code, §496(c);

11. Prejudgment Interest (Cal. Civ.Code, § 3288) and to the extent permitted under applicable U.S. federal law; and

12. Any other relief the Court may deem appropriate.

DATED: October 16, 2026

By: *<u>/s/ Harold McDougall IV</u>*
Harold McDougall IV
Attorney for Plaintiff
JOSEPH NASSER

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: October 16, 2026

By: */s/ Harold McDougall IV*
Harold McDougall IV
Attorney for Plaintiff
JOSEPH NASSER